UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| STACEY S. JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-CV-301-DCP |
| | ) |
| ANDREW M. SAUL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 15].

Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 17 & 18] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 19 & 20]. Plaintiff subsequently filed a Reply [Doc. 21] in response to Defendant's motion. Stacey S. Jones ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **GRANT IN PART** Plaintiff's motion and **DENY** the Commissioner's motion.

### I.  PROCEDURAL HISTORY

Plaintiff protectively filed applications for disability benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. and 1381 *et seq*., on May 2, 2016, alleging disability beginning on April 1, 2016. [Tr. 15, 190–97]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 131–32]. A hearing was held on April 26, 2018. [Tr. 33–57]. On September 6,

2018, the ALJ found that Plaintiff was not disabled. [Tr. 12–32]. The Appeals Council denied Plaintiff's request for review on September 9, 2019 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on October 28, 2019, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2021.
>
> 2. The claimant has not engaged in substantial gainful activity since April 1, 2016, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments: bipolar disorder; adjustment disorder with mixed anxiety and depressed mood; excoriation disorder; and posttraumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant can never climb ladders, ropes, or scaffolds; the claimant can never work at unprotected heights or around dangerous machinery; the claimant can understand, remember, and carry out simple and routine instructions; the claimant can make work related judgments for unskilled work; the claimant can have contact with the general

> public on a rare to no basis; the claimant can have contact with supervisors and coworkers on an occasional and superficial basis; the claimant will work better with things rather than people; and the claimant can deal with changes in a routine work setting on an infrequent and gradual basis.
>
> 6. The claimant is capable of performing past relevant work as a cleaner. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 18–27].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

### IV.  DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to

4

last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence in several regards. First, Plaintiff claims that the ALJ erred by finding that she could perform her past relevant work as a cleaner. [Doc. 18 at 3–6]. Next, Plaintiff contends that the ALJ improperly found that an individual with Plaintiff's RFC was capable of performing the positions of a bakery worker, packager, and laundry worker, as a conflict existed between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"). [*Id.* at 6–9]. Plaintiff asserts that

5

the ALJ improperly failed to consider her obesity and osteoarthritis as severe impairments, as well as erred by failing to consider the impact of her obesity on her ability to work. [*Id.* at 10–15]. Lastly, Plaintiff alleges that the ALJ erred by failing to find that she did not meet a medical-vocational grid rule at step five of the disability determination. [*Id.* at 15–17].

### A. Severe Impairments and Consideration of Plaintiff's Obesity

Plaintiff submits that the ALJ erred by failing to find her obesity and osteoarthritis were severe impairments, as well as that the ALJ subsequently failed to appropriately consider the impact of her obesity on her ability to work in the RFC determination. Plaintiff notes that she "is five feet two inches in height and weighs 204 pounds," with medical records establishing that her Body Mass Index ("BMI") is 37. [*Id.* at 10]; *see* [Tr. 632]. However, Plaintiff claims that the ALJ "did not explain her conclusions regarding her failure to find that [Plaintiff's] obesity was a severe impairment." [Doc. 18 at 10]. Additionally, Plaintiff submits that the ALJ failed to properly consider the effects of her obesity in the RFC determination, as the ALJ found that she had the ability to perform a full range of work with some non-exertional limitations. Plaintiff alleges that the ALJ failed to "consider the impact of [her] obesity and osteoarthritis on her ability to work" in the form of "non-exertional limitations to [the] RFC such as the use of the body to balance, stoop, kneel, crawl, reach, handle, and the use of the fingers for fine activities as provided in Social Security Ruling 83-10." [*Id.* at 11].

Plaintiff notes that the ALJ afforded great weight to the opinions of the nonexamining state agency physicians but claims that they did not properly consider the effects of her obesity. Plaintiff reviews the medical record with respect to pain in her back, hip, hands and left shoulder and asserts that she was not properly sent for a consultative physical examination. Ultimately, Plaintiff alleges that the ALJ's failure to find her obesity and osteoarthritis as severe impairments at Step Two was

6

not harmless because the ALJ failed to include "limitations for physical exertional activities such as standing, walking, lifting, carrying, pushing, and pulling, and non-exertional limitations such as balancing, stooping, crawling, reaching, handling and use of the fingers in fine motor activities" in the RFC determination. [*Id.* at 14].

The Commissioner responds that the ALJ appropriately found that Plaintiff's back problems were not a severe impairment, "as there was little evidence indicating significant limitations" and that the ALJ properly afforded significant weight to the opinions of the state agency medical consultants. [Doc. 20 at 10]. The Commissioner notes that Dr. Michael Cole, who considered the evidence of record at the reconsideration level of the agency's review, explicitly considered Plaintiff's osteoarthritis and obesity. *See* [Tr. 89–91]. Therefore, the Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff did not have a severe physical impairment.

Plaintiff replies that the Commissioner's response "fails to address the combined effects of [her] obesity, as documented in the medical records, on her back and hip from her degenerative joint disease (osteoarthritis) and degenerative dis[c] disease." [Doc. 21 at 1]. Plaintiff asserts that the medical record supports a finding that her obesity is a severe impairment, and the nonexamining state agency consultants failed to consider the effect of her obesity pursuant to Social Security Ruling 02-1p.

At Step Two, the ALJ is required to consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. §§ 404.1508; 416.920(a)(4)(ii); 404.1520(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "must be established by medical evidence

7

consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508; 416.908. Additionally, an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

To be found disabled, "the ALJ must find that the claimant has a severe impairment or impairments" at Step Two. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985). An impairment, or combination of impairments, will be found severe if the impairment(s) "significantly limit[ ] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The Step Two determination is "a de minimis hurdle" in that "an impairment will be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris*, 773 F.2d at 90).

Further, it is well settled that the ALJ's failure to identify some impairments as "severe" is harmless where the ALJ continues the disability determination and considers both severe and nonsevere impairments at subsequent steps of the sequential evaluation as required by the regulations. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

Social Security Ruling 02-1p instructs ALJs to consider the effects obesity may have on a disability claimant throughout the sequential evaluation. 2002 WL 34686281, at *4–7 (Sept. 12,

8

2002).[1]  At Step Two, obesity will be considered "a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." *Id.* at *4. Additionally, SSR 02-1p provides that "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." *Id.* at *6. The Sixth Circuit has instructed that:

> Obesity commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems . . . The ALJ also must specifically take into account the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment, and consider how fatigue may affect the individual's physical and mental ability to sustain work activity . . . .

*Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015) (internal citations and quotation marks omitted).

SSR 02-1p classifies individuals with regard to obesity by considering their BMI. 2002 WL 34686281 at *2. Individuals with a BMI greater than or equal to 30 are considered "obese," with those above a BMI of 40 having the most "extreme" type of obesity with the greatest risk for developing obesity-related impairments. *Id.* Nevertheless, "[t]here is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment." *Id.* at *4. An ALJ is tasked with conducting "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." *Id.*

---

[1] SSR 02-1p was rescinded and replaced by Social Security Ruling 19-2p, effective May 20, 2019. *See* 2019 WL 2161798 (May 20, 2019). Here, because Plaintiff filed her claim prior to this date, SSR 02-1p is still applicable in this case. *See, e.g., Long v. Comm'r of Soc. Sec.*, No. 2:18-CV-00597, 2019 WL 3406431, at *10 (S.D. Ohio July 29, 2019).

Plaintiff states that she was involved in a serious car accident in July of 2010 and a CT scan of her cervical spine demonstrated osteophytes in her cervical spine level 4 through 7 consistent with mild spondylosis, as well as mild sclerosis of the posterior facets from L1 through L5 consistent with osteoarthritis. [Doc. 18 at 12]; *see* [Tr. 317–18, 327–31]. Plaintiff also cites to a March 7, 2013 Parkridge East Hospital emergency room record noting complaints of back pain that radiated to her left buttock, with an alleged physical examination that was abnormal for a left para-lumbar TTP [Tr. 393],[2] as well as additional emergency room complaints of lower back and shoulder pain on May 24, 2015 [Tr. 383], November 27, 2015 [Tr. 409–16], January 8, 2016 [Tr. 365–71], and February 8, 2016 [Tr. 418–34]. Plaintiff contends that she "continued to seek medical help at the Bradley County Health Department for joint and spine medical problems but the doctors were limited without additional testing" and "[a]t various times on physical examination at the Bradley County Health Department[,] . . . she was found to have objective medical findings regarding her joint and spine pain." [Doc. 18 at 13]; *see* [Tr. 441–51; 630–58].

Plaintiff cites to a March 14, 2018 treatment note reflecting that she weighed 203.80 pounds, with a BMI of 37. [Tr. 632]. An August 14, 2017 treatment note states that she was five feet two inches tall, with a weight of 203.60 pounds, and a BMI of 37. [Tr. 631]. An October 31, 2016 treatment note reflects her height as five feet two inches tall, with a weight of 198.6 pounds, and a BMI of 36.3. [Tr. 441–42]. Plaintiff's BMI is similarly listed at 35.9 on September 14, 2016 [Tr. 443–44], and at 35.6 on August 23, 2016 [Tr. 445–46]. Tennessee Department of Health

---

[2] This March 7, 2013 treatment record, however, also reflects a normal inspection of Plaintiff's back with a full and painless range of motion, no midline vertebral tend, no muscle spasm, straight leg raise negative, and no CVA tenderness. [Tr. 393]. Plaintiff's cited treatment records also largely reveal normal range of motion examination findings with, for example, "pain on palpation just at the interior tip of the scapula and tender across to the left axillary area on the posterior surface" and left, lateral, moderate thoracic tenderness but no swelling. *See* [Tr. 423].

primary care records list Plaintiff's BMI at 36.5, 36.7, 37.2, and 37.1 at various dates throughout 2017. [Tr. 630].

Lastly, Dr. Peter Arrowsmith examined the evidence of record at the initial level of the agency's review on July 22, 2016 and found that Plaintiff did not have any physical severe impairments. [Tr. 80]. Dr. Arrowsmith noted that despite Plaintiff's complaints of back, chest, and shoulder pain, the emergency room did not perform any x-rays of her back, the physical examination at the emergency room was completely normal, and there were no deficits in range of motion in Plaintiff's back or any joint. [Tr. 74]. Dr. Cole reviewed the evidence of record in greater detail at the reconsideration level of the agency's review on February 23, 2017 and found that Plaintiff did not have any physical severe impairments. [Tr. 88]. Dr. Cole noted that Plaintiff's BMI was listed at 36.3 on October 31, 2016, and 36.58 on November 23, 2016. [*Id.*]. Dr. Cole also referenced the October 31, 2016 treatment note, which stated Plaintiff reported chronic hand and leg pain for years and being told that she needed an MRI of her spine but couldn't afford the study or the orthopedist. [*Id.*]. Plaintiff underwent a consultative psychological examination with Benjamin Biller, MS, on August 17, 2016 [Tr. 436–40], but did not receive a consultative physical examination.

In the disability decision, the ALJ found at Step Two that Plaintiff's back problems were a nonsevere impairment, as "there is little evidence during the period at issue indicating any significant limitation as a result." [Tr. 18]. The ALJ noted that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1522 and 416.922, as well as SSR 16-3p," and that she considered the medical opinion evidence. [*Id.*]. However, the ALJ found that Plaintiff "failed to meet the burden of demonstrating severe functional limitations

11

resulting from the above impairment, either singly or in combination with the medically determinable severe impairments." [*Id.*].

During the RFC determination, the ALJ afforded great weight to the opinions of Dr. Arrowsmith and Dr. Cole that Plaintiff did not have any severe physical impairments "as their opinions are well supported and consistent with the medical evidence of record as a whole." [Tr. 24]. The ALJ noted that their opinions were "consistent with physical examinations revealing alertness, orientation times four, full range of motion of the back, negative straight leg raising, a normal gait, normal range of motion and strength on musculoskeletal examination, normal muscle tone, normal strength, equal reflexes bilaterally, no motor deficits, no sensory deficits, and intact cranial nerves, II through XII." [*Id.*].

The Court notes that neither party cited to any applicable case law interpreting an ALJ's consideration of obesity in the disability determination or an analysis of Social Security Ruling 02-1p, while the Commissioner's brief failed to cite to this applicable regulation regarding the ALJ's analysis of Plaintiff's obesity. The Commissioner's brief largely fails to address the issue of obesity, merely arguing that the ALJ found that Plaintiff's back problems were not a severe impairment, gave significant weight to the opinions of the nonexamining state agency physicians who explicitly considered Plaintiff's osteoarthritis and obesity, and "Plaintiff presented no medical opinion that her physical impairments imposed any work-related limitations." [Doc. 20 at 10–11]. Plaintiff acknowledges that the medical consultants noted her BMI of 36.3 on October 31, 2016 and 36.58 on November 23, 2016, but alleges that they "did not consider the effect of obesity on her physical and mental impairments." [Doc. 18 at 11].

"Pursuant to SSR 02-1p, an ALJ must consider the functional limitations resulting from a medically determinable impairment of obesity in the RFC assessment, in addition to limitations

12

resulting from any other physical or mental impairment." *Rinker v. Comm'r of Soc. Sec.*, No. 1:16-CV-376-SKL, 2017 WL 2789440, at *4 (E.D. Tenn. June 27, 2017). The Sixth Circuit has held, however, that SSR 02-1p does not require "any particular procedural mode of analysis for obese disability claimants." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006)). Rather, it provides that "obesity, in combination with other impairments, 'may' increase the severity of other limitations." *Id.* (quoting *Bledsoe*, 165 F. App'x at 412). Obesity should be considered on a case-by-case basis because it "may or may not increase the severity or functional limitations of the other impairment." SSR 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002).

In the present case, it is undisputed that the ALJ did not specifically address Plaintiff's obesity in the disability decision. Moreover, the Commissioner does not contest that Plaintiff was obese and that the ALJ was required to address her obesity. Therefore, the key factor before the Court is whether the ALJ's assignment of great weight to the opinions of the nonexamining state agency consultants establishes that she appropriately considered the functional limitations arising from Plaintiff's obesity.

Here, the Court finds two recent opinions from this District illustrative of the ALJ's failure to properly consider Plaintiff's obesity. In *Barker v. Commissioner of Social Security*, the Commissioner argued that despite Plaintiff being obese (non-severe) during the relevant period, and the ALJ's failure to explicitly discuss her obesity, remand was not appropriate because "obesity was not a focus of Plaintiff's claim" and "the ALJ relied on the opinions of consultative examiners and physicians who considered Plaintiff's obesity in making their assessments." No. 1:15-CV-262-SKL, 2016 WL 3448583, at *5 (E.D. Tenn. June 17, 2016) (citing to *Coldiron*, 391 F. App'x at 443 and *Bledsoe*, 165 F. App'x at 408 in support). Magistrate Judge Lee noted

13

that in *Bledsoe*, the Sixth Circuit found that the ALJ had properly considered the claimant's obesity by making "explicit mention of [the claimant's] obesity in his finding of facts" and by "credit[ing] an expert's report that considers obesity." *Id.* (quoting *Bledsoe*, 165 F. App'x at 412); *see, e.g.*, *Coldiron*, 391 F. App'x at 443. Magistrate Judge Lee further noted that "[b]oth *Coldiron* and *Bledsoe* held that as long as the ALJ relies on opinions of physicians or consultative experts who took the claimant's obesity into account in rendering such opinions, there is no need for the ALJ to detail separately his or her own consideration." *Barker*, 2016 WL 3448583 at *5.

In addressing the plaintiff's claim in *Barker*, Magistrate Judge Lee detailed that "[u]nlike in this case, however, the ALJs in both *Coldiron* and *Bledsoe* explicitly discussed the claimants' obesity in their findings of fact," and the "complete omission of any mention of Plaintiff's obesity in the ALJ's decision distinguishes Plaintiff's case from *Coldiron* and *Bledsoe*." *Id.* (citing *Coldiron*, 391 F. App'x at 443; *Bledsoe*, 165 F. App'x at 412). Ultimately, Magistrate Judge Lee found in *Barker* that the ALJ failed to comply with the requirements of SSR 02-1p as "[t]here is nothing of record to indicate that the ALJ actually considered Plaintiff's obesity in combination with other impairments at all stages of the sequential evaluation." *Id.* Additionally, Magistrate Judge Lee found that "[w]hile there is no medical opinion of record that Plaintiff is significantly limited because of her obesity, the complete exclusion of any mention of Plaintiff's obesity makes it impossible for the Court to tell if the ALJ actually considered this condition in formulating the RFC." *Id.* at *6.

Similarly, in *Rinker v. Commissioner of Social Security*, Magistrate Judge Lee again addressed the requirements of Social Security Ruling 02-1p where "(1) although not diagnosed, Plaintiff's weight/BMI score qualified as obese (non-severe) during the relevant period, and (2) that the ALJ did not explicitly discuss obesity in rendering his decision." No. 1:16-CV-376-SKL,

14

2017 WL 2789440, at *5 (E.D. Tenn. June 27, 2017). The Commissioner argued that remand was not appropriate because obesity was not a focus of Plaintiff's claim and "the ALJ relied on the opinion of a psychological examiner who considered Plaintiff's obesity in making an assessment." *Id.* Utilizing largely the same analysis as *Barker*, Magistrate Judge Lee found that while "in some circumstances an ALJ fulfills his duty to consider obesity if he credits the report of an expert who considered obesity," the psychological examiner's "note of Plaintiff's reported height and weight . . . falls woefully short of the applicable requirements for consideration of obesity addressed in SSR 02-1p." *Id.*

In the present case, the Court similarly finds that the ALJ failed to appropriately consider Plaintiff's obesity under Social Security Ruling 02-1p. The Court agrees with the analysis from *Rinker* and *Barker*—two factually similar cases where the claimant was obese, and despite the ALJ's assignment of great weight to the opinions of physicians who reviewed the medical record regarding obesity, the ALJ's failure to explicitly mention or discuss the claimant's obesity distinguished the analysis from *Coldiron* and *Bledsoe*. Although the ALJ is not obligated to employ any "particular mode of analysis" when assessing the impact of a Plaintiff's obesity, the Sixth Circuit explained the ALJ must do more than merely "mention the fact of obesity in passing." *Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015). In the present case, the ALJ failed to make any mention of Plaintiff's obesity in the disability decision, and without more, it is completely unclear whether the Commissioner used her judgment to consider the presence of obesity and the impact of any obesity-related issues in formulating the RFC.[3] *See*

---

[3] In relevant part, Social Security Ruling 02-1p states that "[w]hen the evidence in a case does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body weight or BMI, we may ask a medical source to clarify whether the individual has obesity. However, in most such cases we will use our judgment to establish the

15

Case 1:19-cv-00301-DCP   Document 22   Filed 03/16/21   Page 15 of 20   PageID #: 1020

*Rinker*, 2017 WL 2789440 at *6 ("Citing to SSR 02-1p, the Commissioner further argues that when the evidence contains consistently high body weight or BMI scores in the obesity range but no diagnosis of obesity, the 'ALJ may use his judgment [to establish the presence of obesity] based on the medical findings and other evidence in the case record' . . . Perhaps this argument best illustrates the point: this Court cannot determine whether the ALJ actually used his judgment and considered obesity-related issues.").

Furthermore, the ALJ's assignment of great weight to the opinions of the state agency consultants does not establish that she complied with Social Security Ruling 02-1p. First, Dr. Arrowsmith's opinion does not mention Plaintiff's obesity. Dr. Cole's opinion cites to Plaintiff's BMI and evaluates the medical record with respect to Plaintiff's back pain. However, the opinion does not specifically state that Dr. Cole has considered the effects of Plaintiff's obesity or discuss her obesity in any detail. Regardless of whether Dr. Cole "took the claimant's obesity into account in rendering" his opinion, "the ALJ did not mention Plaintiff's obesity in [her] discussion of the medical evidence, in his RFC determination, or anywhere else in his decision," and thus the "complete omission of any mention of Plaintiff's obesity in the ALJ's decision distinguishes Plaintiff's case from *Coldiron* and *Bledsoe*." *Barker*, 2016 WL 3448583 at *5.

The failure of the ALJ in the present case to indicate that she considered Plaintiff's obesity in combination with the other physical and mental impairments, such as Plaintiff's back pain, establishes that the ALJ failed to comply with the plain language of Social Security Ruling 02-1p. *See, e.g.*, *Shilo*, 600 F. App'x at 959 ("Obesity . . . must be considered throughout the ALJ's

---

presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity." 2002 WL 34686281, at *3 (Sept. 12, 2002).

determinations, 'including when assessing an individual's residual functional capacity,' precisely because 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'") (quoting SSR 02-1p, 2002 WL 34686281, at *1); *Barker*, 2016 WL 3448583 at *6 ("The Court concludes that Plaintiff is not requesting a particular mode of analysis; rather, Plaintiff is requesting that the ALJ engage in *any* analysis of Plaintiff's obesity and its potentially aggravating effect on Plaintiff's back and sleep apnea conditions."). "While there is no medical opinion of record that Plaintiff is significantly limited because of her obesity, the complete exclusion of any mention of Plaintiff's obesity makes it impossible for the Court to tell if the ALJ actually considered this condition in formulating the RFC." *Rinker*, 2017 WL 2789440 at *7. This lack of analysis is compounded by the notation in Dr. Cole's opinion that Plaintiff reported back and hip pain, but that she did not have insurance or the means to have necessary tests performed.

While "[p]erhaps the ALJ would have reached the same result with a proper consideration of obesity . . . there is absolutely nothing of record to indicate the ALJ actually considered Plaintiff's obesity in combination with her other impairments at all stages of the sequential evaluation, as required by the plain language of SSR 02-1p." *Id.* at *6. Accordingly, the Court finds that the decision is not supported by substantial evidence and remand is necessary for the ALJ to appropriately consider Plaintiff's obesity under Social Security Ruling 02-1p.[4]

---

[4] "The Court emphasizes, however, that no particular result is dictated on remand." *See, e.g.*, *Barker*, 2016 WL 3448583 at *6. Additionally, the Court notes that while Plaintiff claims that the ALJ erred by failing to find that her osteoarthritis was a severe impairment, her argument largely centered on the ALJ's failure to consider the effect of her obesity on her joint and spine pain.

17

Under Sentence Four of 42 U.S.C. § 405(g), the Court has the power to remand a case to the Commissioner if there is insufficient evidence on the record and additional fact-finding is required. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994). Therefore, while the Court declines to reverse the disability decision and award benefits, because the ALJ's decision is not supported by substantial evidence, remand is necessary so that the ALJ can provide clarity regarding the issues addressed herein.

### B.     Remaining Issues

Plaintiff raises several other claims of error on appeal, including that the ALJ erred by finding that she could perform her past relevant work as a cleaner due to the assessed mental limitations; that the ALJ improperly found that an individual with Plaintiff's RFC was capable of performing the positions of a bakery worker, packager, and laundry worker, as a conflict existed between the VE's testimony and the DOT; and that the ALJ erred by failing to find that she did not meet Medical-Vocational Gridrule 202.09. The Court finds that a consideration of these issues would be impacted by the ALJ's review of Plaintiff's obesity in the RFC determination. As such, the Court declines to address the remaining allegations of error raised by Plaintiff at this time. *See, e.g.*, *Rinker*, 2017 WL 2789440 at *7 ("Proper consideration of Plaintiff's obesity may impact other issues raised by Plaintiff—such as the weight given to her treating psychiatrist's opinion and the ALJ's evaluation of Plaintiff's subjective complaints and statements concerning the intensity, persistence, and limiting effects of her symptoms—upon remand because an ALJ's credibility analysis is 'inherently intertwined' with the RFC assessment . . . Thus, the Court declines to address the other issues raised by Plaintiff, and the ALJ is free to address them on remand.") (internal citations omitted); *Barker*, 2016 WL 3448583 at *6.

On remand, the ALJ is advised, but not directed, to make specific findings of fact regarding the physical and mental demands of Plaintiff's past relevant work as a cleaner pursuant to Social Security Ruling 82-62, as well as discuss whether Plaintiff had a limited education, and any potential conflicts with the VE's testimony and the DOT regarding the identified reasoning and language levels of certain jobs—if applicable.

"With respect to whether a physical consultative examination [is] necessary, the Sixth Circuit has repeatedly held that the Commissioner is not required to order a consultative examination in order to assist a plaintiff in establishing disability." *Phommakhot v. Saul*, No. 3:19-CV-00168, 2019 WL 3305135, at *5 (M.D. Tenn. July 23, 2019) (collecting cases), *report and recommendation adopted by*, 2019 WL 3780134 (M.D. Tenn. Aug. 12, 2019). The Court notes that the regulations provide that the agency "may ask [the claimant] to have one or more physical or mental examinations or tests" when the evidence as a whole is insufficient, such as if the claimant's "medical sources cannot or will not give us sufficient medical evidence" to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1519a(b); 416.917. "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001). Therefore, on remand, the ALJ has the ultimate responsibility to ensure that a claimant receives a full and fair hearing, *Richardson v. Perales*, 402 U.S. 389, 411 (1971), which includes a duty to fully and fairly develop the record. *See Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986).

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 17**] will be **GRANTED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 19**] will be**DENIED**.  This case will be **REMANDED** to the SSA for the ALJ to appropriately consider Plaintiff's obesity in accordance with Social Security Ruling 02-1p.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge